156 P.3d 1182

STATE of Hawai'i, Plaintiff–
Appellee–Respondent,

v.

Frank FRISBEE, Defendant–
Appellant–Petitioner.

No. 27079.

Supreme Court of Hawai'i.

April 30, 2007.

Daniel H. Shimizu, Deputy Prosecuting Attorney, for the plaintiff-appellee-respondent, State of Hawai'i.

Richard D. Gronna, Honolulu, for the defendant-appellant-petitioner, Frank Frisbee.

MOON, C.J., LEVINSON, ACOBA, and DUFFY, JJ., MOON, C.J., concurring separately, and NAKAYAMA, J., dissenting.

Opinion of the Court by LEVINSON, J.

On December 11, 2006, the defendant-appellant-petitioner Frank Frisbee filed an application for a writ of certiorari urging us to review the summary disposition order (SDO) of the Intermediate Court of Appeals (ICA) in *State v. Frisbee*, No. 27079, 2006 WL 2612884 (September 12, 2006) [hereinafter, "the ICA's SDO"], affirming the January 18, 2005 judgment of the circuit court of the first circuit, the Honorable Victoria S. Marks presiding, convicting Frisbee of and sentencing him for the counts set out *infra* in section I.

We accepted certiorari because the ICA's SDO is inconsistent, *see* Hawai'i Revised Statutes (HRS) § 602–59(b)(2) (Supp.2004), *amended by* 2006 Haw. Sess. L. Act 149, §§ 1 and 3 at 409, with *State v. Matias*, 102 Hawai'i 300, 75 P.3d 1191 (2003), as discussed *infra* in section III. We therefore hold that Frisbee was entitled to a jury instruction on the possibility of merger pursuant to HRS § 701–109(1)(e) (1993).[1] Accordingly, we vacate the ICA's SDO and remand with instructions for the ICA (1) to vacate the circuit court's January 18, 2005 judgment and (2) to remand to the circuit court for a new trial.

## I. BACKGROUND

On August 14, 2000, Frisbee was charged by complaint with, *inter alia*, one count of kidnapping in violation of HRS § 707–720(1)*(d)* (1993) (Count I) and one count of kidnapping in violation of HRS § 707–720(1)*(e)* (1993) (Count II), both allegedly committed in the City and County of Honolulu on or about August 3, 2000.[2]

---

1. HRS § 701–109(1) provides in relevant part:
 When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

 ....

 (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

2. HRS § 707–720(1) provides in relevant part: "A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to: ... (d) Inflict bodily injury upon that person ...; [or] (e) Terrorize that person or a third person...." While

From November 20 through December 3, 2002, the circuit court conducted a jury trial. In his application, Frisbee appears to concede *arguendo* that certain trial testimony would support at least one of the counts:

> [The complaining witness Cher Chang] went with [Frisbee] to the Kam Shopping Center, where [Frisbee] told her to get out of the car. Chang opened the car door and began to get out of the car. As she was getting out of the car [Frisbee] grabbed her by her hair and pulled her back inside the car. Chang sat in the car and continued to ride along with [Frisbee]. They next went to a house by the Eagle Café near ... Kalihi Valley. [Frisbee] got out of the truck and Chang stayed inside then they went to a second house and there [Frisbee] had her get out and go inside with him[;] Chang went and did not protest. [Frisbee] told Chang to kiss him and stuff and tell him that she loved him, and he made her kiss him. After that he began to choke Chang....
>
> They left the house and went to a Chevron gas station to get some chips.... Chang went into the gas station with [Frisbee].... Chang ran out of the store and jumped into another car.... [Frisbee] ran after Chang, grabbed her out from the car by her hair and put her back into his car....

> [Frisbee] drove around and ended up at Sand Island.... [A]s they drove around [Frisbee] began to tell Chang that he was going to shoot [her] and her son....
>
> At Sand Island Chang tried to go into the back of the SUV.... [A]s she did [Frisbee] began to hit her in the chest....

From our review of the entire record, it does not appear that Frisbee registered any objection to the jury instructions at trial, nor do Frisbee's opening brief or his application cite any such objection-in fact, Frisbee's proposed version of the instructions related to Counts I and II was materially identical to the version that was ultimately read to the jury.[3]

On December 3, 2002, the jury found Frisbee guilty as charged of Counts I and II.

On January 10, 2005,[4] Frisbee moved the circuit court "to [d]ismiss Count I or II ... or to have the Counts ... merged into a single offense as it constituted a single course of uninterrupted conduct." The plaintiff-appellee-respondent State of Hawai'i [hereinafter, "the prosecution"] replied that "there was a factual basis for the jury to convict [Frisbee] of more than one count of kidnapping," to wit:

> [Chang and Frisbee] were in a vehicle that was being driven by [Frisbee]. [He] told [her] to get out by the Kam Shopping

---

paragraph (d) is fulfilled by the intent to either "[i]nflict bodily injury upon [a] person or subject that person to a sexual offense," the language of the complaint tracked only the "bodily injury" prong. *Compare* HRS § 707-720(1)(d).

3. The pertinent instructions, as read and given to the jury, stated:

> In Count I ..., ... Frisbee[ ] is charged with the offense of Kidnapping.
>
> A person commits the offense of Kidnapping if he intentionally or knowingly restrains another person with intent to inflict bodily injury upon that person.
>
> There are three material elements of the offense of Kidnapping, each of which the prosecution must prove beyond a reasonable doubt.
>
> These three elements are:
> 1. That, on or about the 3rd day of August 2000, ... [Frisbee] restrained ... Chang; and
> 2. That [Frisbee] did so intentionally or knowingly; and
> 3. That [Frisbee] did so with the intent to inflict bodily injury upon ... Chang.

> In Count II ..., ... Frisbee[ ] is charged with the offense of Kidnapping.
>
> A person commits the offense of Kidnapping if he intentionally or knowingly restrains another person with intent to terrorize that person.
>
> There are three material elements of the offense of Kidnapping, each of which the prosecution must prove beyond a reasonable doubt.
>
> These three elements are:
> 1. That, on or about the 3rd day of August 2000, ... [Frisbee] restrained ... Chang; and
> 2. That [Frisbee] did so intentionally or knowingly; and
> 3. That [Frisbee] did so with the intent to terrorize ... Chang.

4. The delay between the verdict and sentencing was due to: (1) two continuances requested by Frisbee to finish a course at O'ahu Community Correctional Center; (2) three continuances because of withdrawals by Frisbee's counsel; and (3) one continuance by stipulation.

Center. As [she] did so, [he] pulled her back in by her hair. . . . Later on, . . . [he] used both of his hands and choked [her] . . . for about two minutes and told her to kiss him. He made [her] kiss him.

After he choked [Chang], [Frisbee] drove to a Chevron station. [He] exited the vehicle to buy some food. [Chang] ran away from the vehicle and got into the car of a stranger. . . . [Frisbee] followed her and pulled her out of the stranger's car by her hair. [He] dragged her back to his vehicle. [He] threatened to shoot [her] and her son. . . .

At its January 18, 2005 hearing, the circuit court orally ruled as follows:

The first incident, if you will, occurred at or near Kam Shopping Center where [Chang] tried to leave the car. . . . Frisbee grabbed her[ ] by her hair, pulled her back into his car, I think at one point choked her as well.

Later, . . . the complaining witness jumped into another car. . . . Frisbee pulled her out of that car and then threatened her and her son.

So what we have are different times, different acts at different locations. . . .

Accordingly, the circuit court denied Frisbee's January 10, 2005 motion. On January 18, 2005, the circuit court entered its final judgment convicting Frisbee of, *inter alia*, Counts I and II. On January 24, 2005, Frisbee filed his timely notice of appeal.

On direct appeal, Frisbee (1) reiterated the position taken in his motion to dismiss and (2) further argued that the circuit court "err[ed]" by not instructing the jury on the question of a merger of the charges."[5] (Emphases omitted.) In its SDO, the ICA affirmed the circuit court's judgment. (Citing *Matias*, 102 Hawai'i at 306, 75 P.3d at 1197; *State v. Alston*, 75 Haw. 517, 531, 865 P.2d 157, 165 (1994); *State v. Libero*, 103 Hawai'i 490, 501–02, 83 P.3d 753, 764–65 (App.2003); *State v. Momoki*, 98 Hawai'i 188, 194–95, 46 P.3d 1, 7–8 (App.2002).) On December 11, 2006, Frisbee timely filed the present appli-

cation. On January 9, 2007, we accepted certiorari.

During oral argument, Frisbee and the prosecution maintained their respective positions as to the significance of a "temporal break" between the initial restraint and the arguable escape and "recapture" of Chang at the gas station. Frisbee argued that, "even if [Chang] attempted to get away" at the gas station, Frisbee's whole course of conduct amounted to "essentially just the one act." Apparently in the alternative, Frisbee reiterated that the question whether Frisbee's criminal conduct was interrupted is one of fact for the jury. The prosecution posited that Chang's fleeing created an interruption between Counts I and II as a matter of law, *i.e.*, would not support a jury finding of uninterrupted conduct. We commented that the prosecution's closing argument repeatedly characterized the entire incident as "the kidnapping," singular, *see infra* section III.A, but the prosecution replied that, during his opening statement and elsewhere, the prosecutor at trial portrayed Frisbee's conduct as consisting of two separate acts.

## II. STANDARD OF REVIEW

 When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. [However, e]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a crimi-

---

5. As we note elsewhere, Frisbee never objected at trial to the instructions as given. The ICA appears to have construed Frisbee's second point

as an argument that the circuit court should have instructed the jury on merger *sua sponte*. *See* ICA's SDO at 1.

nal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

State v. Gonsalves, 108 Hawai'i 289, 292–93, 119 P.3d 597, 600–01 (2005) (internal citations, quotation marks, indentations, and paragraphing omitted; bracketed material added)[; s]ee also State v. Shinyama, 101 Hawai'i 389, 395, 69 P.3d 517, 523 (2003). . . .

. . . .

. . . In [State v. ]Eberly, [107 Hawai'i 239, 112 P.3d 725 (2005),] we observed that[,]

. . . [w]here instructions were not objected to at trial, if the appellant overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Id. at 250, 112 P.3d at 736.

State v. Nichols, 111 Hawai'i 327, 334–35, 141 P.3d 974, 981–82 (2006) (some brackets added and some in original).

### III. DISCUSSION

In his application for writ of certiorari, Frisbee basically reargues his direct appeal: (1) that the circuit court erred in denying his January 10, 2005 motion to merge Counts I and II; and (2) that the circuit court "err[ed] by not instructing the jury on the question of a merger of the charges." (Emphases omitted.) In particular, Frisbee argues that "there was only one act of kidnapping and the initial act of pulling Chang back into the car to terrorize merged into the act of inflicting harm . . . at the Chevron gas station. . . . The two separate acts . . . were all part of the ongoing criminal offense. . . ." (Quoting HRS § 701–109, see supra note 1; State v.

Ganal, 81 Hawai'i 358, 384, 917 P.2d 370, 396 (1996); State v. Hoey, 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994); Alston, 75 Haw. at 531, 865 P.2d at 165; State v. Freeman, 70 Haw. 434, 441, 774 P.2d 888, 892–93 (1989); State v. Caprio, 85 Hawai'i 92, 104, 937 P.2d 933, 945 (App.1997)) (citing State v. Castro, 69 Haw. 633, 756 P.2d 1033 (1988).) Elaborating on his second point of error, Frisbee asserts that the circuit court should have ascertained by interrogatory whether the jury found that the kidnapping(s) constituted "a single act over a period of time[ ] or two separate acts." (Quoting State v. Culkin, 97 Hawai'i 206, 214–15, 35 P.3d 233, 241–42 (2001).) [6]

However indirectly he arrives there, the bottom line of Frisbee's position is that the circuit court and, hence, the ICA erroneously ruled out the possibility that Counts I and II were grounded in "the same conduct," see HRS § 701–109(1), thereby mandating, at a minimum, that the circuit court instruct the jury regarding merger. We agree with Frisbee.

A. *In Light Of The Whole Record, There Is A Reasonable Possibility That The Jury Instructions Were Prejudicially Insufficient, Erroneous, Inconsistent, Or Misleading.*

 We believe that HRS § 701–109(1)(e), see supra note 1, entitled Frisbee to have the jury apprised of the possible merger of Counts I and II.

HRS § 701–109(1)(e), see supra note [1], interposes a constraint on multiple convictions arising from the same criminal conduct. The statute "reflects a policy to limit the possibility of multiple convictions and extended sentences when the defendant has basically engaged in only one course of criminal conduct directed at one

---

6. Frisbee's application, with its seventeen-page body, exceeds the maximum length permitted by Hawai'i Rule of Appellate Procedure 40.1(d) ("The application for a writ of certiorari shall not exceed 12 pages. . . ."). On December 13, 2006, we ordered Frisbee's counsel to show cause why he should not be sanctioned for violating this rule. He responded promptly and contritely, and, accordingly, we took no further action. In any case, the last five pages of Frisbee's application add little substance beyond a citation to *Culkin*, which repeats the permissive standard for plain error in jury instructions, 97 Hawai'i at 214, 35 P.3d at 241, of which we are freshly aware.

criminal goal[.]" *See* Commentary on HRS § 701–109.

Whether a course of conduct gives rise to more than one crime [within the meaning of HRS § 701–109(1)(e) ] depends in part on the intent and objective of the defendant. The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. Where there is one intention, one general impulse, and one plan, there is but one offense. *All factual issues involved in this determination must be decided by the trier of fact.*

... *Hoey,* 77 Hawai'i [at] 27 n.[ ]9, 881 P.2d [at] 514 n.[ ]9 ... (quoting ... *Alston,* 75 Haw. [at] 531, 865 P.2d [at] 165 ... ). HRS § 701–109(1)(e), however, does not apply where a defendant's actions constitute separate offenses under the law. *See State v. Hoopii,* 68 Haw. 246, 251, 710 P.2d 1193, 1197 (1985).

*Matias,* 102 Hawai'i at 305, 75 P.3d at 1196 (some citations omitted) (some brackets added and some in original) (emphasis in original).

In the present matter, the question whether Frisbee's arguably two acts of "pull[ing] Chang] back inside the car"/"put[ting] her back into his car" precipitated one course of criminal conduct or two was never submitted to the jury. We believe that this contravened the letter and the purpose of HRS § 701–109(1)(e). In other words, a reasonable juror could find that Frisbee executed one continuous "restrain[t]," *see* HRS § 707–720(1), *supra* note 2, which, as the jury should have been instructed, would bar Frisbee's conviction of multiple kidnapping charges. *One* "restrain[t]," even if accompanied by both colors of intent enumerated as HRS § 707–720(1)(d) and (e), cannot support *two* convictions of kidnapping. Moreover, because of the wording of the complaint, *see supra* notes 2 and 3 and accompanying text, even two separate "restrain[ts]" would have to be accompanied by two distinct requisite states of mind—*e.g.,* the prosecution could not apply the intent to terrorize to *both* "restrain[ts]" unless one of the "restrain[ts]"

were also undertaken with the intent to inflict bodily injury.

Not only did the circuit court not *sua sponte* instruct the jury regarding merger, but the prosecution further muddied the waters between Counts I and II by never electing which kidnapping count—*i.e.,* which of the supposedly distinct "restrain[ts]" (one at Kam Shopping Center and the other at the gas station, *see supra* section I) was committed with the intent to terrorize and which was accompanied by the intent to inflict bodily injury. Moreover, the prosecution appears to have conflated the circumstantial evidence supporting the intent to terrorize with the circumstantial evidence supporting the intent to inflict bodily injury.

During his opening statement, the prosecutor stated in pertinent part:

[Frisbee] decided during *th[e] time* [he and Chang] were together that he was not going to let her do anything and that he would show her who was in control. They drove *constantly* after that all over Honolulu.

They stopped at a gas station to get some food.... Chang at that time tried to escape. She ... ran to [a stranger's] car.... [Frisbee] saw her going to that car and trying to escape. [He] went outside from the store, grabbed ... Chang from the car, and pulled her back into the SUV.

... *He pulled her hair and he beat her on the back of the head. He scratched her and he choked her. I'm in control. As they drove to other places, he told her that he had a gun and he would shoot her, and he threatened her family.* ...

Finally they ended up back at Sand Island....

....

... [T]he prosecution will ask you to return a finding of guilt on two counts of Kidnapping.... One count involves the intent to do bodily harm.... [Chang]'ll tell you that he caused her to feel pain. The second count ... involves the *intent to terrorize ... Chang by pulling her*

*hair, beating her up,* threatening her and her family.

(Emphases added.)

On direct examination, Chang testified that, after the episode wherein Frisbee "pulled [her] back in" "by Kam Shopping Center," he said to Chang, "I'm not going to play any games with you." Then, Chang testified, after Frisbee and Chang stopped at two houses and the Eagle Café, he choked her. Later, after Chang ran away, "[Frisbee] came and he grabbed [her] by [her] hair, pulled [her] out[ of the stranger's car], and shoved [her] back into the [SUV]." According to Chang, he then told her she "ain't going anywhere," accompanied by a vile obscenity. Then, before Chang and Frisbee "ended up at Sand Island," Frisbee "[t]hreaten[ed Chang] and stuff.... He threatened to shoot [Chang] and [her] son."

Finally, in closing argument, the prosecution did not foreclose the factual possibility that there was but one continuous course of conduct:

> They went to the Kam Shopping Center.
>
> ... And as [Chang] was getting out, [Frisbee] grabbed her and pulled her back into the SUV. And this is where *the Kidnapping* begins.
>
> ... And, you know from the instructions that were read to you ..., there are two types of Kidnapping in this case—intent to terrorize and the intent to cause bodily injury to ... Chang. We'll discuss both of those. But this is the initiation of *the Kidnapping* ....
>
> ... They continued to drive around.... She tried to escape ... when they went to a gas station....
>
> At that point, [Frisbee] was ... buying some food[ ].... [Chang] ran to the car of a stranger and tried to get in. [Frisbee] saw her. He went after his prey. *He wasn't finished with her yet.* He went to get her, and he pulled her back by her hair.
>
> *During this stage of the Kidnapping, bodily injury to [Chang] occurred not only at that particular episode but throughout. [Frisbee] ... hurt her more than once. He hit her on her chest. He made her kiss*

*him. He choked her. He hit her on the back of her head. And he showed contempt for ... Chang by controlling her in a cruel and crude fashion. He threatened to shoot her and to hurt her family.*

> In the late evening hours, ... [Frisbee] finally stopped beating ... Chang. He stopped the SUV at Sand Island....
>
> ....
>
> [Frisbee] terrified her. And that is one of the kidnappings that is charged in this case, the intent to terrorize....
>
> ....
>
> [Reviews physical evidence of Chang's injuries.]
>
> So ..., with regards to the two counts of Kidnapping—kidnapping with intent to terrorize bodily injury [sic] beyond a reasonable doubt, [Frisbee] is guilty of both of those. Bodily injury ..., it's pain. And ... [Frisbee] caused her pain numerous times when he was beating her up....

(Emphases added.) In its rebuttal argument the prosecution summarized the charges against Frisbee thusly:

> Count I, Kidnapping.... [T]he restraint ... has been proven beyond a reasonable doubt.... Chang was the object of that restraint.... And this is a Kidnapping charge involving bodily injury to ... Chang in the beating he gave her.
>
> *Count II,* once again ... [Frisbee] restrained ... Chang. But this time, with *the intention of terrorizing ... Chang.* And throughout her statement, she told you she was scared of him *after things turned sour at the Kam Shopping Center. He terrorized her....*
>
> ....
>
> ... Chang was consistent in talking about the bodily injury that [Frisbee] inflicted upon her, the terror that she felt....

(Emphases added.) Admittedly, the choking and the "threaten[ing]" occurred sequentially, but the prosecution never established an unmistakable boundary between the allegedly two acts of "restrain[t]."

We do not imply any impropriety or conscious deceit by the prosecution. The prose-

cution may have made an understandable strategic decision to present its case as a seamless narrative about a relentless predator. Nonetheless, in light of the reasonable possibility that the Kam Shopping Center events and the gas station events comprised only "one intention, one general impulse, and one plan," the factual question of merger should have "be[en] decided by the trier of fact." *See Alston*, 75 Haw. at 531, 865 P.2d at 165 (emphasis omitted), *quoted in Matias*, 102 Hawai'i at 305, 75 P.3d at 1196; *State v. Arceo*, 84 Hawai'i 1, 18, 928 P.2d 843, 860 (1996); *Ganal*, 81 Hawai'i at 379, 917 P.2d at 391 (1996); *State v. Vinge*, 81 Hawai'i 309, 319, 916 P.2d 1210, 1220 (1996); *Hoey*, 77 Hawai'i at 27 n. 9, 38, 881 P.2d at 514 n. 9, 525; *State v. Kealoha*, 95 Hawai'i 365, 377, 22 P.3d 1012, 1024 (App.2000).

We are puzzled by the ICA's unelaborated citation of *Matias*, inasmuch as that case is on point and compels an outcome favorable to Frisbee. In *Matias*, the defendant was convicted under the "place to keep firearms" statute and of ownership or possession of a firearm by a felon. 102 Hawai'i at 301, 303–05, 75 P.3d at 1192, 1194–96. We noted that, with respect to both offenses, the charged conduct—the "possessi[on of]" a particular object under the same general circumstances—was identical. *See id.* at 306, 75 P.3d at 1197. Of course, as an attendant circumstance required by both statutes, that particular object happened to be a firearm, but, more importantly, both offenses arose out of the same elemental "conduct," *i.e.*, what the defendant *did* with the object, namely, "possess[ed]" it. *See id.* at 303, 306, 75 P.3d at 1194, 1197. Accordingly, we held, convicting the defendant of both charges without the jury having been received a merger instruction plainly offended HRS § 701–109(1)(e). *Id.* at 306, 75 P.3d at 1197.

On the other hand, while the defendant in *Momoki* was charged with two offenses arising out of the same general act of driving, the crimes' conduct elements differed. *See* 98 Hawai'i at 195, 46 P.3d at 8 (reasoning that the intent to drive under the influence of drugs, "no matter how egregious the case," does not equate to or "subsume[ ]" the intent to drive without due care) (quoting HRS § 701–109(1)(e)). The ICA concluded that "a general intent to" commit one of the crimes does not "inevitably include[ ] an intent to commit the latter" and, consequently, affirmed the convictions. *Id.* While the ICA grounded its discussion in intent, the material difference between the charged offenses lay in their respective conduct elements; *i.e.*, the mere act of "driving," with "the influence of . . . drug[s]" as an attendant circumstance, is not "the same conduct" as the defendant's "swerving" among lanes, *see id.* at 190, 46 P.3d at 3, notwithstanding that "driving" and "swerving" could occur simultaneously. By comparison, in the present matter, the culpable conduct in *both* Counts I and II was Frisbee's "restrain[ing]" of Chang.

Finally, we respond to the ICA's SDO's citation of *Libero*. Insofar as *Libero* implies that an appellate court may determine *de novo* whether a "defendant's course of conduct was uninterrupted" as a matter of law, we hold that it was wrongly decided. In *Libero*, the defendant had been convicted of attempted murder and assault. 103 Hawai'i at 493–94, 83 P.3d at 756–57. He had confessed to the following chain of events:

> [The defendant] hit [the victim]. . . . [The victim] fell and did not get up. [The defendant] took off the bottom half of [the victim]'s clothes. [The defendant] thought he wanted to have sex with [the victim], but then he "didn't want to." [The victim] got up and [the defendant] hit her again. . . .

*Id.* at 495–96, 83 P.3d at 758–59. On appeal, the defendant argued, *inter alia*, "that the circuit court should have issued merger and unanimity instructions to the jury." *Id.* at 501, 83 P.3d at 764. The ICA summarily reasoned that, while the assault and attempted murder charges were based on the same general behavior of "hit[ting]" this particular victim, they did not arise out of an uninterrupted course of conduct: "The State fulfilled its obligation to prove that [the defendant] committed 'separate offenses under the law' by showing that [he] at one point intended only to harm [the victim] and at another point intended to cause her death." *See id.* at 501–02, 83 P.3d at 764–65. The ICA thereby ignored the reasonable possibility of

an HRS § 701–109(1)(e) violation and our oft-repeated admonition that "the factual question of merger" is one for the trier of fact.

B. *The Jury Instructions Were Plainly Erroneous.*

 We realize that Frisbee neither objected to the instructions as read nor requested his own version of a merger instruction. Nevertheless, Hawai'i Rule of Penal Procedure 52(b) allows for an appellate court to redress "[p]lain errors or defects affecting substantial rights" and " '[w]e have recognized that [plain] error occurs when the trial court's instructions to the jury fail to preclude the return of guilty verdicts which violate the statutory mandate of HRS § 701–109,' " *see supra* note 1, *Matias,* 102 Hawai'i at 306, 75 P.3d at 1197 (some brackets added and some in original) (quoting *Alston,* 75 Haw. at 529, 865 P.2d at 164). In light of our case law enunciating the trial court's responsibility for oversight of jury instructions regardless of attorneys' failure to object, *see Nichols,* 111 Hawai'i at 335 & n. 5, 336, 337 & n. 6, 141 P.3d at 982 & n. 5, 983, 984 & n. 6 (quoting *State v. Haanio,* 94 Hawai'i 405, 415, 16 P.3d 246, 256 (2001); *State v. Astronomo,* 95 Hawai'i 76, 82, 18 P.3d 938, 944 (App.2001)), we believe that the ICA gravely erred by failing to remedy an instructional error that is not harmless beyond a reasonable doubt. We do not contend that merger is foreordained, *i.e.,* that a reasonable and properly instructed juror could not find an "[ ]interrupt[ion]" of Frisbee's course of conduct. Nevertheless, given the reasonable possibility that the jury's verdict led to two convictions for "the same conduct," we hold that the circuit court's failure to charge the jury with respect to merger contravened HRS § 701–109(1)(e) and was not harmless beyond a reasonable doubt.

## IV. *CONCLUSION*

In light of the foregoing analysis, we (1) vacate the ICA's judgment, (2) vacate the circuit court's January 18, 2005 judgment, and (3) remand to the circuit court for a new trial, *see Matias,* 102 Hawai'i at 306, 75 P.3d at 1197.

Concurring Opinion by MOON, C.J.

Although I join in the decision of the majority, I write separately because of the concerns expressed by the dissent. Simply put, the dissent does not agree with the majority's plain error review of Frisbee's contention that the circuit court erred in failing to give a merger instruction. Dissenting Op. at 84–85, 156 P.3d at 1190–1191. The dissent characterizes the majority's recognition of plain error as having been done "*sua sponte*" and reiterates its concurring and dissenting opinion in *State v. Nichols,* 111 Hawai'i 327, 141 P.3d 974 (2006), in which I had joined. Dissenting Op. at 84–85, 86, 156 P.3d at 1190–1191, 1192. I share many of the concerns raised in the *Nichols* concurrence and dissent, particularly regarding the obligation placed upon the appellate courts to seek out erroneous jury instructions, regardless whether the error was alleged in the circuit court or on appeal. *See id.* at 342–48, 141 P.3d at 989–95 (Nakayama, J., concurring and dissenting). In this case, however, I do not believe the majority went "out of its way to notice plain error." Dissenting Op. at 85, 156 P.3d at 1191. Although Frisbee did not explicitly phrase the circuit court's alleged failure to instruct the jury on the question of merger in terms of *plain* error, he *did* raise the issue and argued it as error. I, therefore, do not believe the concerns expressed in the *Nichols* concurrence and dissent are implicated in the context of this case; accordingly, I agree with the majority.

Dissenting Opinion by NAKAYAMA, J.

I dissent from the majority's decision.

The majority concludes *sua sponte* that the jury instructions were "[p]lainly [e]rroneous," *see* Majority op. at 83–84, 156 P.3d at 1189–1190 (emphasis omitted) *and also id.* at 83–84, 156 P.3d at 1189–1190. It is, of course, well-established that instructional error, assuming it exists, is presumptively harmful; but it is equally true, as the majority notes, that Frisbee failed to make *any* objections to the jury instructions as given at trial. *See e.g.,* Majority op. at 79 n. 5, 156 P.3d at 1185 n. 5. Thus, plain error becomes a potential issue, as the majority recognizes. However,

Frisbee made *no* contention of plain error on appeal to the ICA, instead posing the question, "[d]id the [circuit] court commit *error* by not instructing the jury on the question of a merger of the charges?" (Emphasis added.) (Frisbee's emphasis omitted.) (Capitalization omitted.) The following instructive excerpt from his argument is, I believe, a fair summary of Frisbee's contentions:

> As the facts of this case unfolded it should have been apparent to this Court that a possible question as to whether the counts I and II should have merged and been presented to the jury. Clearly where there is one event and either one or another act would have made the offense the jury should have been presented with the question of whether the two counts should have merged. In this case the instructions were incomplete as they gave the legal definition for Counts I and II but they failed to consider whether, under the state of the facts that were presented to them, [HRS § ] 701–109 was applicable and should have been considered. *All that would have been necessary in this case would have been an interrogatory asking the jury if the kidnapping was from a single act over a period of time, or two separate acts.*

(Emphasis added.) Nowhere within the foregoing excerpt, or anywhere else in his opening brief, does Frisbee assert that, or otherwise explain how, the circuit court committed *plain error*—an error that impacted his substantial rights.

Further, in "basically reargu[ing] his direct appeal[ ]" on certiorari, *see* Majority op. at 80, 156 P.3d at 1186, Frisbee does not assert that the circuit court or ICA plainly erred on his appeal to *this* court. Granted, it is fairly obvious from the entire record what the *gravamen* of Frisbee's appeal is (that the circuit court's failure to issue a merger instruction or clarifying jury interrogatory led to his conviction for two separate kidnapping offenses when, in his view, he should only have been convicted of one), notwithstanding the "indirect[ ]" path by which he arrives there. *See* Majority op. at 80, 156 P.3d at 1186. Nonetheless, I do not believe that the

majority should be going out of its way to notice plain error by essentially *inferring* a claim of plain error from Frisbee's arguments. This may be permissible under, for example, Hawai'i Rules of Appellate Procedure Rule 40.1(d) (2006) ("[t]he supreme court, at its option, may notice a plain error not presented[ ]"), and the inherent powers of this court, but as our jurisprudence clearly instructs, "[t]he plain error rule is a departure from the position usually presupposed by the adversary system that a party must look to his counsel to protect him and that he must bear the cost of the mistakes of his counsel." *State v. Fox*, 70 Haw. 46, 56, 760 P.2d 670, 675 (1988) (quoting 3A Wright, *Federal Practice and Procedure: Criminal 2d* § 856 (1982) (footnote omitted)). As a result, "our power to deal with plain error is one to be exercised *sparingly and with caution*[,]" *State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (emphasis added).

Again, no plain error is being asserted here. *Contrast e.g., State v. Matias*, 102 Hawai'i 300, 305, 75 P.3d 1191, 1196 (2003) (defendant-appellant's specific assertion of plain error). Nor are we presented with a case where this court has elected to notice plain error *sua sponte* because of the *particularly* egregious and obviously harmful nature of the error. For example, in *State v. Yamada*, 99 Hawai'i 542, 57 P.3d 467 (2002), a special jury instruction, in pertinent part, directed the jury to return a guilty verdict for "EMED manslaughter" (manslaughter based upon extreme mental or emotional disturbance ("EMED")) if "one or more jurors believes or believe" that the prosecution had failed to *disprove* the EMED defense to first degree murder. *See id.* at 548, 57 P.3d at 473; *see also* HRS § 707–702(2) (1996 version) (EMED affirmative defense). This court noticed plain error *sua sponte* and vacated the defendant-appellant's manslaughter convictions because of the patently and prejudicially erroneous nature of the instruction, which excused the jury of rendering a unanimous verdict as to EMED manslaughter and also "potentially allowed a single juror to highjack the proceedings and strongarm the other eleven panel members into returning a verdict convicting Yamada of manslaughter." *See id.* at 551–52, 57 P.3d at

476–77; *see also id.* at 557–63, 57 P.3d at 482–88 (Acoba, J. concurring).

We do not have a *Yamada*-type situation here. As the majority notes, "Frisbee's proposed version of the instructions *related to Counts I and II* [ (the separate kidnapping counts) ] *was materially identical to the version that was ultimately read to the jury.*" *See* Majority op. at 78, 156 P.3d at 1184 (emphases added) (footnote omitted). It was not until over two years *after* the jury found Frisbee guilty that Frisbee moved the circuit court to either dismiss his convictions of Counts I and II, or merge them into a single offense for purposes of sentencing. *See* Majority op. at 78, 156 P.3d at 1184. Inasmuch as Frisbee not only failed to object to the jury instructions as given, but also was fully cognizant of the two separate offenses inasmuch as he *proposed* materially identical jury instructions as to Counts I and II, I fail to see how the alleged error in this case rises to

the extreme levels seen in *Yamada* or other cases in which this court has noticed plain error *sua sponte.*[1] Therefore, I respectfully dissent.

I also write separately to reiterate my dissent in *State v. Nichols,* 111 Hawai'i 327, 342–48, 141 P.3d 974, 989–95 (2006) (Nakayama, J., concurring and dissenting, joined by Moon, C.J.), because I strongly disagree with the majority's statement that the trial courts have (sole) responsibility "for oversight of jury instructions *regardless of attorneys' failure to object*[.]" *See* majority op. at 83–84, 156 P.3d at 1189–1190 (emphasis added).

---

1. *See e.g., State v. Davia*, 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998) (prosecution conceded, and this court held, that district court plainly erred by failing to ensure that defendant-appellant's no contest plea was knowingly and voluntarily made), and *State v. Loa*, 83 Hawai'i 335, 357–59, 926 P.2d 1258, 1280–82 (1996) (holding that circuit court plainly erred in allowing jury instruction for the nonexistent offense of "attempted reckless manslaughter" as a purported "lesser included offense" of attempted first degree murder, where defendant-appellant was convicted of the nonexistent offense).