Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000079
29-MAY-2020
10:50 AM

NO. CAAP-18-0000079

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

SCOTT BRIAN SMITH, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 99-0325(2); S.P.P. NO. 17-1-0008(2))

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Petitioner-Appellant Scott Brian Smith (**Smith**) appeals from the Findings of Fact, Conclusions of Law, and Judgment Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody, entered on December 12, 2017 (**2017 Order Denying Relief**), by the Circuit Court of the Second Circuit (**Circuit Court**).[1] On appeal, Smith argues the Circuit Court erred when it denied his Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner for Custody (**2017 Petition**), which contended that his consecutive sentences were

_____

[1]     The Honorable Peter T. Cahill presided.

illegal, the omission of a jury instruction on merger deprived him of a fair trial, and his appellate counsel's assistance was ineffective.

I.   BACKGROUND

In the underlying criminal case, after a jury trial, Smith was convicted of:  first-degree assault, as a lesser included offense of second-degree attempted murder (Count 1); first-degree terroristic threatening (Count 2); first-degree sexual assault (Counts 3, 4, 5, and 6); kidnapping (Count 8); and use of a deadly or dangerous weapon in the commission of a crime (Count 9).[2]  The Circuit Court sentenced Smith to forty-five years of imprisonment, imposing the following terms consecutive to each other:  (1) concurrent twenty-year terms for Counts 3, 4, 5, and 6; (2) a ten-year term for Count 1; (3) a ten-year term for Count 8; and (4) concurrent five-year terms for Counts 2 and 9.[3]

On direct appeal, Smith argued, *inter alia*, that the Circuit Court abused its discretion in sentencing him to "extended terms" of imprisonment.  State v. Smith, 106 Hawaiʻi 365, 369, 378, 105 P.3d 242, 246, 255 (App. 2004), cert. denied, 106 Hawaiʻi 477, 106 P.3d 1120 (2005) (**Smith I**).  This court noted the Circuit Court imposed consecutive, not extended, prison terms, and that the consecutive terms were not an abuse of discretion.  Id. at 378-79, 105 P.3d at 255-56.  Smith's

_____

[2]    The Honorable Shackley F. Raffetto presided over the trial and sentencing.

[3]    Smith's trial counsel did not request a jury instruction on merger with respect to Count 1 and Count 8.

appellate counsel did not make any argument regarding the lack of a jury instruction for merged offenses.

On July 29, 2013, in S.P.P. No. 13-1-0008(2), Smith filed a Petition to Vacate, Set Aside or Correct Judgment or to Release Petitioner from Custody (**2013 Petition**) under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40.  Smith v. State, CAAP-13-0005313, 2015 WL 4608127, *1 (Haw. App. July 31, 2015) (SDO) (**Smith II**).  Smith's 2013 Petition argued, *inter alia*, that his appellate counsel's assistance was ineffective because he failed to "respond to the Hawaii Supreme Court when they wanted to hear more," and failed to raise the following:  (1) erroneous jury instruction regarding reasonable doubt, (2) "violation of discovery," and (3) ineffective assistance of trial counsel.  On November 7, 2013, the Circuit Court entered an order denying the 2013 Petition (**2013 Order Denying Relief**).  Smith appealed, and this court affirmed.  Smith II, 2015 WL 4608127, at *2-*3. On October 27, 2015, after this court entered a judgment on appeal in CAAP-13-0005313, but before the supreme court denied certiorari, Smith filed a Motion to Recalculate Multiple Terms of Imprisonment Mandated by Act 194 (**Motion to Recalculate**).  Smith v. State, CAAP-15-0000920, 2017 WL 384096, *2 (Haw. App. Jan. 27, 2017) (SDO) (**Smith III**).  The Motion to Recalculate sought relief

under "Act 194"[4] and requested, *inter alia*, an attorney to assist him with his Act 194 claim.  Id.

On November 3, 2015, the Circuit Court entered an order stating, *inter alia*, it was "unable to ascertain whether it has jurisdiction" because it did not know whether Smith filed for certiorari from this court's judgment affirming the 2013 Order Denying Petition (**November 2015 Order**).  The Circuit Court denied the Motion to Recalculate "without prejudice to the issue being raised in the proper proceeding."

Thereafter, Smith filed a Motion for Direct Appeal of Judgment by Peter T. Cahill on and only on Act 194 Recalculate Multiple Terms of Imprisonment and or Reconsideration, which this

---

[4]     As discussed below in Section III.D., Act 194 of 2015 amended Hawaii Revised Statutes (**HRS**) § 706-668.5.  See Smith III, 2017 WL 384096, at *2-*3.  HRS § 706-668.5 provides:

> § **706-668.5 Multiple sentence of imprisonment.**
> (1)  If multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively.  Multiple terms of imprisonment run concurrently unless the court orders or the statue mandates that the terms run consecutively.
>
> (2)  The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706-606.
>
> (3)  For terms of imprisonment imposed prior to June 18, 2008, the department of public safety shall post written notice in all inmate housing units and the facility library at each correctional facility for a period of two months and send written notice to the defendant no later than January 1, 2016, that shall include but not be limited to:
>
> (a) Notice that the department of public safety may recalculate the multiple terms of imprisonment imposed on the defendant; and
>
> (b) Notice of the defendant's right to have the court review the defendant's sentence.

court construed as a notice of appeal from the November 2015 Order.  On January 27, 2017, this court affirmed, stating the Circuit Court did not err in finding that Smith's Motion to Recalculate was improper, but noting that the Circuit Court could have treated it as a new HRPP Rule 40 petition.  However, as the Circuit Court denied the motion without prejudice, and Smith could file an HRPP Rule 40 petition raising a claim under Act 194, and given the "muddled record relating to his Act 194 claim," this court held that the circuit court did not err in denying Smith's Motion to Recalculate without prejudice.  Id.

On May 31, 2017, Smith filed the subject 2017 Petition, which alleged four grounds for relief:  (1) the Circuit Court's imposition of consecutive sentences violated his right to a fair trial, where the sentencing transcript and judgment "appear to be in conflict," and the Circuit Court failed to consider all statutory sentencing factors or state its reason for imposing multiple consecutive sentences; (2) the Circuit Court improperly "based the severity of sentencing on [Smith's] failure to take responsibility and admit guilt"; (3) the Circuit Court failed to instruct the jury on the possibility of merger regarding Count 1 and Count 8; and (4) appellate counsel was ineffective for failing to raise issues regarding the omission of a merger instruction and the Circuit Court's "penalizing [Smith] for the court's lack of remorse perception[.]"

On December 12, 2017, the Circuit Court entered the 2017 Order Denying Relief, which denied the 2017 Petition without a hearing.  The Circuit Court concluded, *inter alia*, that:

(1) Smith's claim regarding his consecutive sentences was already ruled upon by this court and was without a trace of support in the record or from other evidence; (2) Smith's claim that the Circuit Court enhanced his penalty for refusing to admit guilt was not colorable; (3) Smith's claim regarding the merger instruction omission was waived and showed no colorable claim, and (4) Smith's ineffective assistance of appellate counsel claim was previously ruled upon and showed no colorable claim.  The Circuit Court also denied the State's request to correct Smith's sentence, stating it was procedurally improper.

On December 22, 2017, Smith filed a motion for reconsideration (**Reconsideration Motion**), which was also denied. Smith timely filed a Notice of Appeal.

In addition, in the underlying criminal case, Cr. No. 99-0325(2), on December 27, 2017, Smith filed a "Motion to Review Consecutive Sentence Under HRS § 706-668.5" (**Motion to Review Sentence**), which contended that (1) he has a right to have his sentence reviewed under HRS § 706-668.5, and (2) his consecutive sentences are illegal because the sentencing court did not adequately explain its rationale for imposing consecutive sentences, as required by the supreme court in State v. Barrios, 139 Hawaiʻi 321, 389 P.3d 916 (2016).  On November 21, 2018, the Circuit Court entered Findings of Fact and Conclusions of Law on Defendant's Motion to Review Consecutive Sentence (**2018 Order re Sentence**), stating, *inter alia*, that Smith's kidnapping conviction should have been an "A" felony based on the jury's answered interrogatories.  The 2018 Order re Sentence stated that

Barrios does not retroactively apply to Smith's sentence; however, "there are clear errors in the original sentence imposed and the sentence is illegal because it was based on something contrary to the jury's decision."  The Circuit Court concluded that Smith was entitled to seek relief in an HRPP Rule 40 proceeding and directed Smith's counsel to refile the Motion to Review Sentence as an HRPP Rule 40 petition.

On January 2, 2019, Smith filed a Petition for HRPP Rule 40 Relief under HRPP Rule 35 for an Illegal Sentence and/or to Vacate, Set Aside, or Correct Judgment (**2019 Petition**) in S.P.P. No. 19-1-0001(2).  On March 20, 2019, the Circuit Court granted the 2019 Petition (**2019 Order Granting Relief**), finding, *inter alia*:

> 8.  After jury trial, Smith was sentenced upon convictions for: four counts of sexual assault in the first degree ("A" felony, 20 year term); Assault 1 and Kidnap[p]ing (each as "B" felony, 10 year term); and Terroristic Threatening 1 and Use of a Deadly Weapon (each "C" felony, five year term).  There was an issue as to whether the Kidnapping conviction was an "A" or "B" grade conviction.
>
> 9.  The trial court imposed multiple consecutive sentences. [Smith] would serve all of the "A" felony charges for sexual assault concurrently for a 20 year sentence.  The "B" felony charges of 10 years would be served consecutively for 20 years.  The trial court ruled that only the "A" felony charges were concurrent, and all other charge levels with respect to each other, were consecutive.
>
> 10.  On the judgment, it provides the "C" felony charges would be served concurrent for 5 years.  The kidnapping would be a "B" felony, and the two "B" felonies would be consecutive to each other.  Also, each of the different grade level terms would be consecutive to each other such that Defendant was given a 45 year sentence (20+10+10+5).
>
> 11.  The Kidnapping conviction should have been an "A" felony because the jury answered interrogatories for the kidnapping verdict answering yes to each question that defendant did not release CW voluntarily; without serious or substantial bodily injury; or in a safe place.
>
> 12.  The court finds that there is an inconsistency between the jury's findings and the trial verdict; the

7

sentencing transcript and the judgment as to the grade of the Kidnapping conviction; and application of consecutive sentencing with regards to the "C" felonies and other levels, depending upon whether the Kidnapping conviction was an "A" felony, and/or there was only one "B" felony conviction and only 10 years consecutive (*since there would be only one grade level charge*).

. . .

15.  The court finds that the "B" kidnapping was erroneous, and then when it was run consecutive to the other "B" felony, such was a clear illegal sentence because defendant was not found guilty of "B" felony kidnapping and the sentence was based upon something other than the jury's finding.

16.  The Court finds that another inconsistency is if Kidnapping was an "A" felony, whether it would be concurrent like the other "A" felonies, such that it would change the overall consecutive sentence (*with only one "B" felony providing only "one" 10 year term in that grade of offense*).

17.  The Court finds that the trial court's sentence at sentencing hearing, does not match the judgment entered following conviction and the Court finds this sentence illegal.

The Circuit Court concluded that because the jury found the kidnapping conviction was a class A felony, and sentences for class A felonies were to be concurrent with each other, "[c]onsecutive sentencing between the different grade levels would be 20 + 10 + 5, which is different than the 45 imposed by the sentencing court."  The Circuit Court held that Smith's sentence was therefore illegal and that Smith should be resentenced.

On May 2, 2019, the Circuit Court entered a Judgment; Conviction and Sentence; Notice of Entry (**2019 Judgment**) in the underlying criminal case, resentencing Smith as follows:

FINAL JUDGMENT AND SENTENCE OF THE COURT

TERM: TWENTY (20) YEARS, Counts Three-Six, and Eight
      TEN (10) YEARS, Count One
      FIVE (5) YEARS, Counts Two and Nine

Court ordered the following:

• Counts Three-Six and Eight to run concurrent to each other.

8

- Count One to run consecutive to Counts Two, Three-Six, Eight and Nine.

- Counts Two and Nine to run concurrent to each other and concurrent to Counts One, Three-Six and Eight.

- Mittimus to issue forthwith, with credit for time served.

- All conditions previously ordered to remain in full force and effect. . . .

On July 1, 2019, Smith filed a notice of appeal from the 2019 Judgment, which was filed in CAAP-19-0000475.

The same day, Smith filed an HRPP Rule 35 Motion for Reduction of Sentence (**Motion for Reduction of Sentence**), seeking to reduce his sentence to concurrent sentencing for Count 1 because of his medical condition.[5]  On September 20, 2019, the Circuit Court denied Smith's Motion for Reduction of Sentence. Smith also filed an Amended Notice of Appeal from the 2019 Judgment and the Circuit Court's order denying Smith's Motion for Reduction of Sentence.

## II.  POINTS OF ERROR

Smith raises three points of error in this appeal, contending that:  (1) the Circuit Court's denial of the 2017 Petition violated due process because the 2015 legislative amendment to HRS § 706-668.5 provided him the right to a review of his consecutive sentences; (2) his sentence is illegal because "it does not track the verdict and judgment of conviction"[6] and the circuit court did not adequately state its reasons for imposing consecutive sentences; and (3) the Circuit Court erred

---

[5]     Smith's counsel stated Smith "maxed out on all other charges at or about June 23, 2019."

[6]     Smith argues that the sentencing court erroneously determined his kidnapping conviction was a B felony when the jury interrogatories supported an A felony, and the oral sentence differed from the judgment.

when it rejected his claims that (a) his sentence appeared to be an enhanced penalty for his refusal to admit guilt; (b) an omission of a merger jury instruction violated his right to a fair trial; and (c) he had ineffective assistance of appellate counsel.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

Orders denying HRPP Rule 40 petitions are reviewed *de novo*.  <u>Lewi v. State</u>, 145 Hawaiʻi 333, 345, 452 P.3d 330, 342 (2019).

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim.  To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court's proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing.  The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.

<u>Id.</u> (citation omitted).  We review a "circuit court's conclusions of law *de novo* and findings of fact for clear error."  <u>De La Garza v. State</u>, 129 Hawaiʻi 429, 438, 302 P.3d 697, 706 (2013) (citation and quotation marks omitted).

IV.  <u>DISCUSSION</u>

A.  <u>Arguments Regarding Illegal Sentence</u>

Smith's first two points of error, as well as part of his third point of error, contend that his sentence was illegal, for various reasons, and therefore he is entitled to relief. However, we take judicial notice of the 2019 Order Granting Relief, which concluded that Smith's sentence was illegal, and

the 2019 Judgment, in which Smith was resentenced.  See Hawaiʻi Rules of Evidence Rule 201.

As the supreme court has held regarding mootness:

> A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law.  The rule is one of the prudential rules of judicial self-governance founded in concern about the proper—and properly limited—role of the courts in a democratic society.  We have said the suit must remain alive throughout the course of litigation to the moment of final appellate disposition to escape the mootness bar.
>
> Simply put, a case is moot if the reviewing court can no longer grant effective relief.

Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007) (format altered).

Because the Circuit Court resentenced Smith, this court can no longer grant effective relief regarding his arguments that his original sentence is illegal, and they are therefore moot. See, e.g., State v. Clement, CAAP-11-0000410, 2015 WL 9315564, *4, (Haw. App. Dec. 18, 2015) (SDO) (holding alleged infirmities related to defendant's original minimum term hearing were moot, where paroling authority held new minimum term hearing and entered new minimum term order).

B.  Merger

Smith argues that the Circuit Court erroneously rejected his claim that the "omission of a necessary merger instruction" violated his right to a fair trial.  Smith argued in the 2017 Petition that he was entitled to a jury instruction regarding the possible merger of Count 1 (first-degree assault) and Count 8 (kidnapping).  The Circuit Court rejected Smith's claim, as follows:

11

14. In the underlying criminal case, Petitioner did not request a merger instruction; all the jury instructions were given by agreement. Therefore, Petitioner waived the issue of a merger instruction, which is a challenge to the validity of the conviction and not the sentence.

15. The Hawaiʻi Supreme Court found that Petitioner completed the act of kidnapping when he first entered the home and restrained the complainant in her bed. Any subsequent restraint of the complainant which continued throughout the sexual assault and assault, were not necessary to the perpetration of the kidnapping.[7]

16. Therefore, Petitioner's claim is denied without a hearing pursuant to HRPP Rule 40(g)(2), because this ground is waived and shows no colorable claim.

Smith did not request a merger instruction at trial, nor did he raise the issue on direct appeal or in the 2013 Petition. Thus, Smith's merger argument is arguably waived under HRPP Rule 40(a)(3). Nevertheless, the supreme court has held that it is plain error not to give a merger instruction where there is a reasonable possibility that merger applies. State v. Frisbee, 114 Hawaiʻi 76, 84, 156 P.3d 1182, 1190 (2007). HRPP Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In Grindling v. State, 144 Hawaiʻi 444, 452-53, 445 P.3d 25, 33-34 (2019), the supreme court stated that HRPP Rule 52(b) may apply in an HRPP Rule 40 proceeding. Accordingly, we consider whether there is a reasonable possibility that merger applies to Counts 1 and 8.

---

[7] We have not found any appellate case regarding Smith that contains the ruling in Paragraph 15. Paragraph 15 appears to refer to State v. Horswill, 75 Haw. 152, 162, 857 P.2d 579, 584 (1993) ("Horswill completed the act of kidnapping when he first entered the home and restrained Complainant in her bed. Any subsequent restraint of Complainant, which continued throughout the subsequent sexual assault and assault, was not necessary to the perpetration of the kidnapping."), abrogated on other grounds as recognized by State v. Pecpec, 127 Hawaiʻi 20, 34 n.19, 276 P.3d 589, 603 n.19 (2012).

HRS § 701-109(1) (1993) provides:

> **§ 701-109 Method of prosecution when conduct establishes an element of more than one offense.**
> (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element.  The defendant may not, however, be convicted of more than one offense if:
>
> . . .
>
> > (e)  The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

HRS § 701-109(1)(e) "interposes a constraint on multiple convictions arising from the same criminal conduct." Frisbee, 114 Hawai'i at 80, 156 P.3d at 1186.

> Whether a course of conduct gives rise to more than one crime [within the meaning of HRS § 701-109(1)(e)] depends in part on the intent and objective of the defendant.  The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. Where there is one intention, one general impulse, and one plan, there is but one offense.  All factual issues involved in this determination must be decided by the trier of fact.
>
> HRS § 701-109(1)(e), however, does not apply where a defendant's actions constitute separate offenses under the law.

Id. (quoting State v. Matias, 102 Hawai'i 300, 305, 75 P.3d 1191, 1196 (2003)) (emphasis added).

In State v. Hoopii, 68 Haw. 246, 710 P.2d 1193 (1985), Hoopii was convicted of kidnapping, rape and sodomy, and he claimed his kidnapping conviction was prohibited by, *inter alia*, HRS § 701-109(1)(d).  Id. at 250, 710 P.2d at 1196.  The supreme court disagreed, stating, *inter alia*, that "where a defendant in the context of one criminal scheme or transaction commits several acts independently violative of one or more statutes, he may be punished for all of them if charges are properly consolidated by

13

the State in one trial."  Id. at 251, 710 P.2d at 1197 (citations omitted).  The Hoopii court stated that

> In this case, Appellant committed and completed the act of kidnapping at the moment he restrained the victim by abducting her, putting her in his van and driving away.  Any restraint which continued throughout the subsequent rape and sodomy was not necessary to the perpetration of the kidnapping.  Appellant would still be subject to prosecution for kidnapping had he not continued to restrain the victim throughout the rape and sodomy.  Moreover, these later acts themselves constituted separate and independent offenses.

Id. (internal citation omitted).

In State v. Hoey, 77 Hawaiʻi 17, 38 881 P.2d 504, 525 (1994), the supreme court held it is possible for kidnapping and robbery charges to merge under HRS § 701-109(1)(e), where "(1) there is but one intention, one general impulse, and one plan, (2) the two offenses are part and parcel of a continuing and uninterrupted course of conduct, and (3) the law does not provide that specific periods of conduct constitute separate offenses."  The Hoey court analyzed the elements of the robbery and kidnapping charges:

> [A] robbery consists of a continuing course of conduct in which a defendant, in the course of committing theft, is armed with a dangerous instrument, uses force against the victim, and the defendant's use of force is intended to overcome the victim's physical resistance or physical power of resistance.  Such a course of conduct, depending on the state of the record, may or may not encompass the material elements of the form of kidnapping proscribed by HRS § 707-720(1)(c) (Supp. 1992), i.e., the intentional or knowing restraint of another person with intent either to facilitate the commission of a felony or flight after the commission of the felony.

Id. (emphasis added).

The Hoey court concluded that based on the record, "the question whether Hoey's kidnapping offense merged into the robbery [offense] pursuant to HRS § 701-109(1)(e) is one of fact that should have been submitted to the jury" and thus held the

14

trial court erred in refusing a merger instruction.  Id. at 38-39, 881 P.2d at 525-26.  While the court's analysis did not cite specific trial testimony, the Opinion noted that Hoey confessed before trial that:  (1) Hoey and Chad Akimoto (**Akimoto**) lured the victim into an arcade room; (2) Akimoto hit the victim, causing her to fall, and bound her hands and feet; (3) Hoey unsuccessfully tried to tape the victim's mouth, then partially covered her head with a plastic bag; (4) Hoey and Akimoto took the arcade's and the victim's money; and (5) Hoey then disabled the telephone and locked the door.  Id. at 22, 881 P.2d at 509.

In Frisbee, the supreme court explained that HRS § 701-109(1)(e)'s application turns on whether offenses share the same "charged conduct."  114 Hawaiʻi at 83, 156 P.3d at 1189.  As an example where offenses share the same conduct, the supreme court discussed Matias, where the defendant was convicted under the "place to keep firearms" statute and of ownership or possession of a firearm by a felon.  Id.  The Frisbee court explained that a merger instruction was required because both offenses in Matias "arose out of the same elemental 'conduct,' i.e., what the defendant did with the object, namely, 'possessed' it."  Id. (citation and brackets omitted).

In State v. Lavoie, CAAP-15-0000643, 2018 WL 1905957, *8-*9 (Haw. App. Apr. 23, 2018) (MOP), vacated, 145 Hawaiʻi 409, 453 P.3d 229 (2019), this court held that a merger instruction was unnecessary for felon-in-possession and place-to-keep charges, adopting a circuit court's analysis that the offenses arose from separate and distinct facts:  the defendant completed

the felon-in-possession offense before he left his home on the incident date, and he then committed the place-to-keep offense when he loaded and transported the firearm.  Id.  The supreme court rejected this analysis, stating, *inter alia*, that the jury — not the circuit court — should have determined whether the offenses were "factually separate and distinct and whether 'there [was] but one intention, one general impulse, and one plan[.] Trial courts are not tasked with making factual findings regarding when each offense occurred or whether the defendant's conduct constitutes 'an uninterrupted continuous course of conduct'; the jury must make such determinations.'" Lavoie, 124 Hawaiʻi at 433, 453 P.3d at 253 (citation omitted).

Here, Smith was convicted of first-degree assault in violation of HRS § 707-710 (1993),[8] as a lesser included offense of second-degree attempted murder (Count 1); and kidnapping in violation of HRS § 707-720(1)(d) (1993)[9] (Count 8).  First-degree assault is committed when a person "intentionally or knowingly causes serious bodily injury to another person."  HRS § 707-710.

_____

[8]     HRS § 707-710 provides:

> **§ 707-710 Assault in the first degree**.  (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.
>
> (2)    Assault in the first degree is a class B felony.

[9]     HRS § 707-720(1)(d) states:

> **§ 707-720 Kidnapping**.  (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:
>
> . . .
>
> (d)    Inflict bodily injury upon that person or subject that person to a sexual offense[.]

Kidnapping, as proscribed in HRS § 707-720(1)(d), prohibits intentionally or knowingly restraining a person with intent to "[i]nflict bodily injury upon that person or subject that person to a sexual offense[.]"

The State argues that a merger instruction was unnecessary, citing Hoopii, 68 Haw. 246, 710 P.2d 1193, and Horswill, 75 Haw. 152, 857 P.2d 579.  In Horswill, the supreme court rejected Horswill's contention that his kidnapping, sex assault and assault convictions violated HRS § 701-109(1)(a),[10] stating "where two different criminal acts are at issue, supported by different factual evidence, even though separated in time by only a few seconds, one offense by definition cannot be included in the other."  75 Haw. at 162, 857 P.2d at 584. Horswill "completed the act of kidnapping when he first entered the home and restrained Complainant in her bed.  Any subsequent restraint of Complainant, which continued throughout the subsequent sexual assault and assault, was not necessary to the perpetration of the kidnapping."  75 Haw. at 162, 857 P.2d at 584-85 (citations omitted).

The State contends that, similar to Hoopii and Horswill, "the act of kidnapping was completed when Smith tackled CW in the hallway and dragged her to the son's bedroom, which occurred before he sliced CW with the knife and inflicted four vaginal penetrations."  The State argues that the kidnapping charge was a "separate and independent criminal act from the

_____

[10]    HRS § 701-109(1)(a) (1985) prohibits convictions of more than one offense involving the same conduct if one offense is included in the other. See also Horswill, 75 Haw. at 161-62, 857 P.2d at 584.

17

assault in the first degree charge, supported by different factual evidence, to allow conviction for both offenses." However, as the supreme court held in Lavoie, the jury, not the court, is to determine whether acts supporting each offense are separate and distinct.  Lavoie, 145 Hawaiʻi at 432, 453 P.3d at 252.  Moreover, as discussed below, the trial record does not appear to contain a clear delineation between the acts constituting kidnapping and assault.

This court's Memorandum Opinion in State v. Carlton, CAAP-14-0000892, 2016 WL 3063684 (Haw. App. May 27, 2016) is instructive.  In Carlton, the court held that a merger instruction was required for, *inter alia*, kidnapping and second-degree assault charges.  Id. at *6-*8.  The trial record showed: (1) Carlton tried to grab CW's keys and cell phone; (2) CW punched Carlton and put him in a chokehold; (3) two people hit CW with baseball bats, knocking CW and Carlton to the ground; (4) those two people and a third hit and kicked CW, causing him to release Carlton; (5) while CW was being hit and kicked so he could not get up, Carlton got up, the group grabbed CW's feet and dragged him, and Carlton and another person tried to bind CW's feet; (6) a person in the group poured gasoline on CW and tried to light a match; and (7) Carlton and another person kicked CW in the head.  Id. at *1-*2.

The court observed the assault count charged Carlton as a principal and/or accomplice for causing bodily injury to CW with a dangerous instrument, "to wit, a baseball bat," and that, under certain circumstances, like if CW was knocked to the ground

by one blow from the baseball bat, the conduct prohibited by the assault statute would not be a "course of conduct crime," as the offense would be committed without further action. Id. at *7 (citing Hoopii, 68 Haw. at 251, 710 P.2d at 1197). However, this court rejected the State's contention that, because the baseball bat assault took place before any act constituting kidnapping occurred, the kidnapping and assault charges cannot merge. Id. This court noted the conduct element of kidnapping is "restraint," and that the State's theory at trial was that the restraint giving rise to the kidnapping charge was CW's inability to stand up due to the physical attack and that the resulting bruises were evidence of an intent to inflict bodily injury. Id. This court further stated the evidence suggested that, in addition to being knocked down by the bat, CW was repeatedly struck with the bat while on the ground. We thus concluded that "it is not clear that the acts constituting the [k]idnapping were separate and independent offenses from the assault with a dangerous instrument," and that it was reasonably possible that the jury convicted Carlton of kidnapping and assault based, in part, on CW being struck with a baseball bat while on the ground, and that there was one general intent. Id. A merger instruction was therefore required. Id.

Here, while the State argues Smith "completed" the kidnapping conduct before he cut her, the State's narrative at trial did not delineate Smith's conduct giving rise to the kidnapping and assault charges.

In its opening statement, the prosecution stated, in relevant part:

> And without warning as [CW] sat next to her two-and-a-half-year-old son on the couch, the defendant delivered a reign of blows on [CW].
>
> . . .
>
> She tried to run for the telephone in . . . her roommate's room, but he grabbed her by the legs, dragged her down, turned her around and start[ed] slicing at her with a utility knife[.]
>
> . . .
>
> He dragged her from the hallway to her son's room.  In that room he threw a towel at her, pointed out her wounds, told her to take care of them.
>
> . . .
>
> He told her he would cut her from ear to ear.  He told her many, many things.
>
> And he took her sexually, forcefully, repeatedly on the floor of her child's room with the child in the room.  Telling her even that he was going to stick the knife in her down there and cut her out down there.
>
> At some point he collapsed in sleep or in drunkenness on the floor with her in the corner where she was huddled for all of those hours as he terrorized her.  His hands still around her to keep her from going.
>
> When she heard him snoring, she thought this might be the chance.  She had tried at one point to run from the room, and it didn't work out.

(Emphasis added).

CW testified at trial that, *inter alia*, Smith began punching her without warning, and she ran toward her roommate's room, but Smith tackled her in the hallway.  Smith continued to punch CW in her face and body as she lay on the floor.  Smith grabbed CW by the hair and dragged her down the hallway into their son's bedroom.  Smith continued to punch CW in the face, then stopped and told her she had been cut, stating, "Look what you made me do.  You made me cut you."  CW saw that her right leg, right arm, and thumb were slashed.  Although CW was not sure

how Smith cut her, she saw Smith with a utility knife later that night.  Smith gave CW a towel to soak up the blood but continued to berate her.  For the next several hours, Smith kept CW in their son's room, and he threatened to cut her "from ear to ear" if she tried to leave.  CW tried to escape once by lunging at Smith and swinging at his face, but Smith forced her back to the floor and kicked her in the face several times.  Throughout the night, Smith screamed at CW and would smack her in the head and tell her to open her eyes.  CW remained trapped in their son's room the rest of the night, and after the sun came up, Smith sexually assaulted her.  Later that morning, CW was huddled in a corner of the room, and Smith crawled over to her, put his head in her lap, wrapped his arms around her legs, and fell asleep. CW then ran away.

When discussing the kidnapping charge in closing argument, the State mentioned Smith kicking CW, but it is unclear whether the State contended Smith's kicks were part of his restraint of CW or demonstrated his intent to further injure her:

> Kidnapping:  That he restrained [CW], and did so intentionally or knowingly.  And did so with the intent to inflict bodily injury on her or subject her to sexual assault in the first degree.
>
> Clearly this happened.  This woman was in this room for eight hours.  She ran out, cannot see, bleeding everywhere, collapsed on a neighbor's floor, and she left her baby.  <u>He kept her there.</u>  She wasn't there for her own good time.  And he did so intentionally or knowingly because look at the room.
>
> <u>He kept her in that room and would not let her go.</u> And she told . . . you <u>she tried at one point to escape.</u> She tried to rush him when she was by the closet door in the bedroom.  <u>Tried to go for his eyes, tried to go for his groin.</u> <u>And what he did he put her to the floor and he roundhouse kicked her.  He kept her there.  And he did so with the intent to inflict bodily injury on her or subject her to sexual assault in the first degree.</u>

> How do we know?  Because he did it.  He inflicted more bodily injury on her in that room.  He beat her up some more in the room. . . .
>
> Roundhouse kicking her, putting her up against the wall and sexually assaulted her not once but five times[.]

(Emphasis added).

While the trial record contains evidence supporting both kidnapping and first-degree assault charges, conduct giving rise to the assault offense (e.g., Smith's kicking CW) could also constitute the restraint element of the kidnapping offense.  In addition, it appears that kidnapping and first-degree assault may be charged as continuous offenses.  First, the statutes proscribing first-degree assault and kidnapping do not prohibit charging the offenses as a continuing offense.  See HRS §§ 707-710, 707-720(1)(d), 707-700.  Second, the relevant element of first-degree assault ("causes serious bodily injury") and kidnapping ("restrains another") may constitute a continuous act or series of acts.  See State v. Apao, 95 Hawaiʻi 440, 448, 24 P.2d 32, 40 (2001) (stating, in examining whether a specific unanimity instruction was required, "this court has previously stated that, under certain circumstances, kidnapping would be an example of a continuing offense.").

Based on the foregoing, Smith's conduct could establish an element of kidnapping and first-degree assault, each of which may be a course of conduct crime.  Accordingly, the jury was required to determine whether there was "one intention, one general impulse, and one plan," and whether the two offenses merged.  Lavoie, 145 Hawaiʻi at 432, 453 P.3d at 252 (citing,

*inter alia*, <u>Hoey</u>, 77 Hawaiʻi at 38, 881 P.2d at 525). Thus, Smith was entitled to a merger instruction.

We conclude that the appropriate remedy for plain error in failing to instruct the jury about possible merger of Counts 1 and 8 is not necessarily a new trial on these offenses. On remand, the State may remedy the merger-instruction error by dismissing one of the two counts that could potentially merge or, if the State chooses, the State may retry Smith on both counts. See <u>State v. Padilla</u>, 114 Hawaiʻi 507, 517, 164 P.3d 765, 775 (App. 2007).

IV. <u>CONCLUSION</u>

For the foregoing reasons, the Circuit Court's December 12, 2017 Order Denying Relief is vacated, and this case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.[11]

DATED: Honolulu, Hawaiʻi, May 29, 2020.

| On the briefs: | /s/ Katherine G. Leonard<br>Presiding Judge |
|---|---|
| Matthew S. Kohm,<br>for Petitioner-Appellant. | /s/ Derrick H.M. Chan<br>Associate Judge |
| Renee Ishikawa Delizo,<br>Deputy Prosecuting Attorney,<br>County of Maui,<br>for Respondent-Appellee. | /s/ Keith K. Hiraoka<br>Associate Judge |

---

[11] As Smith's contention that he received ineffective assistance of appellate counsel was based on his arguments regarding his sentence and the lack of a merger instruction for Counts 1 and 8, we need not address the parties' arguments regarding ineffectiveness and/or waiver of Smith's ineffective assistance of counsel claim.